**DUISBERG v. CROWLEY, Alien Property Custodian.**

**No. 2936.**

District Court, D. New Jersey.

March 6, 1944.

Richard J. Fitzmaurice, of Orange, N. J., (Eugene L. Garey, Peter Keber, and A. J. Nydick, all of New York City, of counsel), for plaintiff.

Thorn Lord, U. S. Atty., of Trenton, N. J. and George A. McNulty, Chief, Alien Property Unit War Division, A. Matt Werner, General Counsel to Alien Property Custodian, and Louis P. Haffer, Atty., Alien Property Unit War Division, Department of Justice, all of Washington, D. C., for defendant.

FAKE, District Judge.

This suit is instituted under the provisions of the Trading With The Enemy Act, 50 U.S.C.A. Appendix § 9(a).

Issues now arise on motions to dismiss the complaint. It is argued for the defendant that this court is without jurisdiction to entertain the suit and that the complaint fails to state a cause of action, because plaintiff has failed to allege that he is not a "national" of a foreign country within the meaning of Section 5(b) of the aforesaid Act, as amended, 50 U.S.C.A. Appendix § 5(b).

The complaint discloses that plaintiff is and has been a resident citizen of the United States since prior to April 10, 1940, and prior to June 30, 1942, he was the "sole, absolute and record owner of 1,975 shares of the capital stock of General Dyestuff Corporation, a New York corporation * * * which said stock was in his possession". That on or about July 8, 1942, the defendant, purporting to act pursuant to a certain vesting order No. 33, which is made part of the complaint, took the aforesaid stock into his possession "without warrant of law", against the consent and over the protest of the plaintiff. Plaintiff seeks an injunction restraining the disposition of the stock until final judgment and eventually the return of the stock with an accounting.

Section 9(a) of the Act provides: "Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, * * * to

the Alien Property Custodian or seized by him hereunder * * * may file with the said custodian a notice of his claim * * * if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity * * * in the district court of the United States for the district in which such claimant resides * * * (to which suit the Alien Property Custodian * * * shall be made a party defendant), to establish the interest, right, title, or debt so claimed * *· *." The language which is deleted above does not, in my opinion, have any bearing on the issues here and leaves the remaining language so clear and certain as to require no further interpretation and standing alone justifies the plaintiff's entrance into this court.

It is argued for the defendant, however, that Section 5(b) of the Act has amended Section 9(a) so as to require plaintiff to allege in his complaint that he is not a "national" within the meaning of that term as used in Section 5(b) of the Act, as amended.

Section 5(b) provides that "During the time of war * * * the President may, through any agency that he may designate * * * and under such rules and regulations as he may prescribe * * * (B) * * * nullify, void * * * any acquisition holding, withholding * * * of * * * any property in which any foreign country or national·thereof has any interest * * * with respect to any property, subject to the jurisdiction of the United States * * *." Here again by the same approach the language needs no interpretation, and it is conceded on the argument that the President has designated the Alien Property Custodian to function under the Act.

Looking now to the question of rules and regulations designated by the President as mentioned above, it is found that by express provision in First War Powers Act 1941, § 302, 50 U.S.C.A. Appendix § 617, "All * * * rules, orders, * * * issued by * * * the President * * * under the Trading With the Enemy Act of October 6, 1917, * * * as amended * * * are hereby approved, ratified, and confirmed." This took effect December 18, 1941, and at that time it had been provided by Executive Order No. 8389, as amended,

12 U.S.C.A. § 95 note, that "The term 'national' shall include * * * (iii) Any person to the extent that such person is, or has been, since such effective date, acting or purporting to act directly or indirectly for the benefit or on behalf of any national of such foreign country, and (iv) Any other person who there is reasonable cause to believe is a 'national' as herein defined."

Returning again to the question bearing upon the requirement for a negative allegation in the complaint bearing upon a "national" as defined: it will be seen that for present purposes it is not necessary at this time to pass upon the question as to whether Section 5(b) has amended Section 9(a).

██ It appears on the face of the complaint that plaintiff is a resident citizen of the United States. The restrictions involved in the term "national", as defined, are in derogation of his rights as a citizen; therefore they should be construed favorably toward him wherever possible without thwarting the valid objects of the Act. This leads to a close examination of the complaint to ascertain whether it negatives the thought that the plaintiff is such a "national". Vesting Order No. 33 as read into the complaint shows the defendant purported to act under. the authority of Section 5(b), as amended, in seizing the capital stock in question and found that it was the property of a foreign "national" as designated under the provisions of Executive Order No. 8389, as amended.

██ Plaintiff denies the thought that the stock is the property of such a "national", when he alleges that he, a resident American citizen, is the "sole and absolute" owner and that it was taken from him without "warrant of law" and over his protest. This allegation, directed as it is to the vesting order, amounts to a denial that the stock in question is owned by a foreign "national". Therefore whether Section 9(a) is amended or not, plaintiff has denied· that he is a "national" as defined.

██ Moreover, stripping the complaint of its prayers for equitable relief would lay bare an action in replevin and over the years the declaration in replevin which merely alleged an unjust detention was sufficient to put defendant to a plea (see Chitty on Pleading). This, coupled with the maxim that equity follows the law,

makes the complaint good aside from the considerations above outlined. The motion to dismiss on this ground is therefore denied.

■ The motions to dismiss for failure to pursue administrative remedies is denied for the reasons set forth by Judge Bondy in Draeger Shipping Co. v. Crowley, D.C., 49 F.Supp. 215.

■ The motion to dismiss as against the defendant personally is granted for failure of proper service.