SCHILLING *v.* ROGERS, ATTORNEY GENERAL.

No. 319.   Argued February 29–March 1, 1960.—
Decided June 20, 1960.

*Henry I. Fillman* argued the cause for petitioner.   With him on the brief were *Otto C. Sommerich* and *Isadore G. Alk*.

*Assistant Attorney General Kramer* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Townsend, Irving Jaffe, George B. Searls* and *Victor R. Taylor.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Section 32 (a) of the Trading with the Enemy Act (added by 60 Stat. 50, as amended, 50 U. S. C. App. § 32 (a)) authorizes the return in certain circumstances of property vested by the United States during World War II. Under that provision:

> "The President, or such officer or agency as he may designate, may return any property or interest vested in or transferred to the Alien Property Custodian (other than any property or interest acquired by the United States prior to December 18, 1941), or the net proceeds thereof, whenever the President or such officer or agency shall determine . . ."

that the following conditions are met: (1) the claimant was the owner of the property in question prior to its vesting, or is the legal representative or successor in interest of the owner;[1] (2) he was not a member of any of several excluded classes, summarized in the margin;[2] (3) the

---

[1] § 32 (a) (1): "That the person who has filed a notice of claim for return, in such form as the President or such officer or agency may prescribe, was the owner of such property or interest immediately prior to its vesting in or transfer to the Alien Property Custodian, or is the legal representative (whether or not appointed by a court in the United States), or successor in interest by inheritance, devise, bequest, or operation of law, of such owner . . . ."

[2] § 32 (a) (2) disqualifies: (A) the Governments of Germany, Japan, Bulgaria, Hungary, and Rumania; (B) corporations or associations organized under the laws of such nations; (C) persons voluntarily resident since Dec. 7, 1941, in any such nation, other than American citizens, certain diplomatic officers, or certain persecuted persons; (D) citizens of such nations, other than certain persecuted

property was not used pursuant to a "cloaking" arrangement, whereby the interest of an ineligible person in the property was concealed;[3] (4) there is no danger of liability in respect of the property attaching to the Custodian under the renegotiation statutes;[4] and (5) "such return is in the interest of the United States."[5]

The particular provision involved in this case is paragraph 2 (D) of § 32 (a), which makes ineligible citizens of certain enemy countries who were present in those countries after the onset of hostilities, and its first proviso (added by 60 Stat. 930), which exempts from that ineligibility certain persons who were the victims of persecution.[6]

---

persons, who were present or engaged in business there between Dec. 7, 1941, and Mar. 8, 1946; and (E) certain foreign corporations or associations which, after Dec. 7, 1941, were controlled by persons falling within the above categories.

[3] § 32 (a)(3): "that the property or interest claimed, or the net proceeds of which are claimed, was not at any time after September 1, 1939, held or used, by or with the assent of the person who was the owner thereof immediately prior to vesting in or transfer to the Alien Property Custodian, pursuant to any arrangement to conceal any property or interest within the United States of any person ineligible to receive a return under subsection (a)(2) of this section . . . ."

[4] § 32 (a)(4): "that the Alien Property Custodian has no actual or potential liability under the Renegotiation Act or the Act of October 31, 1942 (56 Stat. 1013; 35 U. S. C. §§ 89–96), in respect of the property or interest or proceeds to be returned and that the claimant and his predecessor in interest, if any, have no actual or potential liability of any kind under the Renegotiation Act or the said Act of October 31, 1942; or in the alternative that the claimant has provided security or undertakings adequate to assure satisfaction of all such liabilities or that property or interest or proceeds to be retained by the Alien Property Custodian are adequate therefor . . . ."

[5] § 32 (a)(5).

[6] § 32 (a)(2)(D) disqualifies: "an individual who was at any time after December 7, 1941, a citizen or subject of Germany, Japan, Bulgaria, Hungary, or Rumania, and who on or after December 7, 1941, and prior to the date of the enactment of this section, was pres-

The question for decision is whether the District Court had jurisdiction to review a determination of the Director, Office of Alien Property, sanctioned by the respondent Attorney General, holding this proviso inapplicable to the facts presented by the petitioner's claim.[7]

Petitioner, a national and resident of Germany at all material times, duly filed with the Attorney General a claim under the § 32 (a)(2)(D) proviso for the return of the proceeds of certain property vested by the respondent's predecessors in 1942, 1947, and 1948, asserting an interest therein of some $68,500. He alleged that throughout the relevant period he, as an "anti-Nazi," claimed to have been a discriminated-against political group, had been deprived of full rights of German citizenship, in that he had been denied admission to the practice of law. A Hearing Examiner recommended allowance of the claim, but his recommendation was rejected by the Director on the ground that petitioner was ineligible for relief under the § 32 (a)(2)(D) proviso.[8] The Attorney General

---

ent (other than in the service of the United States) in the territory of such nation or in any territory occupied by the military or naval forces thereof or engaged in any business in any such territory: *Provided*, That notwithstanding the provisions of this subdivision return may be made to an individual who, as a consequence of any law, decree, or regulation of the nation of which he was then a citizen or subject, discriminating against political, racial, or religious groups, has at no time between December 7, 1941, and the time when such law, decree, or regulation was abrogated, enjoyed full rights of citizenship under the law of such nation . . . ."

[7] On May 16, 1946, the President delegated his functions under § 32 (a) to the Alien Property Custodian. Exec. Order No. 9725, 11 Fed. Reg. 5381. On Oct. 15, 1946, the functions of the Custodian were transferred to the Attorney General. Exec. Order No. 9788, 11 Fed. Reg. 11981.

[8] The Director stated the essence of his decision as follows: "Even if it were to be assumed that denial of a license to practice law deprived claimant of full rights of citizenship, his claim must be disallowed for the reason that he was not a member of a political,

refused review. Petitioner then sued in the District Court to review the administrative determination, claiming it to have been arbitrary and illegal. The court denied the Government's motion to dismiss the complaint for want of jurisdiction. The Court of Appeals reversed, holding, in line with its own prior course of decisions, that judicial review of the administrative disposition was precluded by § 7 (c) of the Trading with the Enemy Act. 106 U. S. App. D. C. 8, 268 F. 2d 584. Because of the importance of the question in the proper administration of the Trading with the Enemy Act we brought the case here. 361 U. S. 874. For reasons given hereafter we affirm the judgment below.

Petitioner's principal reliance is upon § 10 of the Administrative Procedure Act which provides for judicial review of agency action "[e]xcept so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion." 60 Stat. 243, 5 U. S. C. § 1009. We find that both such limitations are applicable here.

Section 7 (c) of the Act provides:

> "The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter . . . transferred . . . to the Alien Property Custodian . . . shall be that provided by the terms of this Act . . . ." 40 Stat. 1021.

We perceive no basis for petitioner's contention that § 7 (c) limits only the remedies available to nonenemies under § 9 (a), or for construing § 7 (c), passed in 1918, as not being applicable to § 32, passed in 1946. The language of the section is "all-inclusive," *Becker Steel Co.* v. *Cummings,* 296 U. S. 74, 79, and it speaks to the future

---

racial or religious group that was discriminated against. Anti-Nazis and non-Nazis do not constitute a political group." (Citing past administrative decisions.)

as well as the past. See also *Central Union Trust Co.* v. *Garvan,* 254 U. S. 554, 568.

The only express provision in the Trading with the Enemy Act for recourse to the courts by those claiming the return of property vested during World War II is that contained in § 9 (a). That section, however, is applicable only to persons not enemies or allies of enemies as defined in the relevant statutes, and hence is not available to this petitioner, an enemy national.[9] While § 9 (c) also entitles certain classes of "enemies" enumerated in § 9 (b) similarly to sue in the courts to recover vested property whose return is authorized under § 9 (b), those sections apply only to World War I vestings. See *Feyerabend* v. *McGrath,* 89 U. S. App. D. C. 33, 189 F. 2d 694; cf. *Markham* v. *Cabell,* 326 U. S. 404. Although § 32 (a) broadened the categories of those having an enemy status who were eligible for the return of property vested during World War II, unlike § 9 (c) it contains no express provision for judicial relief in respect of such claims.

The question then is whether a right to such relief can fairly be implied, for we shall assume that if such be the case the requirements of § 7 (c) would be satisfied. The terms of § 32 and its legislative history speak strongly against any such implication. The absence in § 32 of any provision for judicial relief respecting "enemy" claims for the return of property vested during World War II stands in sharp contrast to the presence of such a provision in

---

[9] Section 9 (a) authorizes "[a]ny person not an enemy or ally of enemy" (defined in § 2 of the Act, as supplemented by the First War Powers Act, 1941, 55 Stat. 838) to sue in equity for the return of vested property in which he claims an interest, either in the District Court for the District of Columbia or in the District Court of the district in which the claimant resides. 40 Stat. 419, as amended, 50 U. S. C. App. § 9 (a). As a German national and resident, petitioner is concededly an "enemy" under the statute.

§ 9 (c) with respect to certain enemy claims arising out of World War I vestings. The original version of what ultimately became § 32 did contain a provision for judicial relief comparable to that in § 9 (c), not applicable, however, to property of enemy national-residents, as well as a "sole relief and remedy" provision comparable to that in § 7 (c)—H. R. 4840, § 32 (b), (c), in Hearings before Subcommittee No. 1 of the Committee on the Judiciary, House of Representatives on H. R. 4840, 78th Cong., 2d Sess., pp. 1–2—but the subsequent draft of the bill, substantially in the form as finally enacted in March 1946 (60 Stat. 50), omitted both provisions. See H. R. 3750, in Hearings before Subcommittee No. 1 of the Committee on the Judiciary, House of Representatives, on H. R. 3750, 79th Cong., 1st Sess., pp. 1–2. While the legislative record contains no explanation of these omissions, the committee hearings on H. R. 3750 and those on subsequent amendments to the Act preclude the view that it was contemplated that persons having an enemy status, still less those who were nationals and residents of enemy countries, should have the right of recourse to the courts with respect to administrative denials of return claims.

Speaking to H. R. 3750 at the initial committee hearing, Mr. Markham, then Alien Property Custodian, stated:

> "I want to be sure I make this clear. Supposing a person applies to the Custodian for the return of a property, and for reasons that I deem appropriate under the bill I refuse to return the property. Now, we will say this person would have to be a technical enemy, a Frenchman. He has no right to compel me to return it under this bill." Hearings before Subcommittee No. 1 of the Committee on the Judiciary, House of Representatives, on H. R. 3750, 79th Cong., 1st Sess., p. 14; see also pp. 11, 15.

And when a few months later, in August 1946, various amendments to the statute were considered and the § 32 (a)(2)(D) proviso was added (60 Stat. 930), § 32 came under severe criticism because of the absence of provisions for judicial relief in respect of return claims by technical enemies. See Hearings before a Subcommittee of the Senate Committee on the Judiciary, on S. 2378 and S. 2039, 79th Cong., 2d Sess., pp. 57–59, 61, 62–63. The affording of such relief to enemy nationals was, however, at no time suggested. Congress, nevertheless, permitted § 32 to stand without enacting provisions for such judicial relief,[10] and later proposed legislation of that character also failed of enactment. See S. 2544, 82d Cong., 2d Sess.; S. 34, 83d Cong., 1st Sess.[11]

---

[10] At the same time, however, Congress enacted other provisions relating to judicial remedies, § 33 providing a statute of limitations on the commencement of suits under § 9, and § 34 providing for judicial review of administrative determinations on debt claims allowable out of vested property (60 Stat. 925). In connection with the former section there was spread in the Congressional Record, with the approval of the Chairman and Ranking Member of the House Judiciary Committee, a letter from the Custodian stating his understanding that "this amendment is not to be regarded as implying that there is judicial review under section 32." 92 Cong. Rec. 10486. Similarly, in connection with the enactment of § 32, a few months before, Congress had added to the Act § 20 providing for judicial review of administrative allowances of counsel fees in return proceedings before the Custodian, 60 Stat. 54. See also S. Rep. No. 920, 79th Cong., 2d Sess., p. 7.

[11] More particularly with reference to the § 32 (a)(2)(D) proviso, neither the Committee hearings preceding its enactment, see Hearings before a Subcommittee of the Senate Committee on the Judiciary, on S. 2378 and S. 2039, 79th Cong., 2d Sess.; cf. Hearings before Subcommittee No. 1 of the Committee on the Judiciary, House of Representatives, on H. R. 5089, 79th Cong., 2d Sess., nor later Senate or House Reports referring to the proviso—see S. Rep. No. 784, 81st Cong., 1st Sess.; H. R. Rep. No. 2338, 81st Cong., 2d Sess.; S. Rep. No. 600, 82d Cong., 1st Sess.; Final Report of the Subcommittee on

The conclusion which the history of § 32 impels is confirmed by the text of the section and other provisions of the Act. The absence of any provision for recourse to the courts in connection with § 32 (a) return claims contrasts strongly with the care that Congress took to provide for and limit judicial remedies with respect to other aspects of the section and other provisions of the Act. See, *e. g.,* §§ 32 (d), 32 (e), 32 (f),[12] 33, 34 (e), 34 (f), 34 (i). It is not of moment that these provisions concerned direct judicial relief, and not court review of denials of administrative relief. The point is that in this Act Congress was advertent to the role of courts, and an absence in any specific area of any kind of provision for judicial participation strongly indicates a legislative purpose that there be no such participation. Beyond this, the permissive terms in which the § 32 return provisions are drawn (*ante,* p. 667) persuasively indicate that their administration was committed entirely to the discretionary judgment of the Executive branch "without the intervention of the courts." See *Work* v. *Rives,* 267 U. S. 175, 182.

Petitioner, however, relying on *McGrath* v. *Kristensen,* 340 U. S. 162, contends that even though he might not be entitled to judicial review of an adverse administrative determination on the *merits* of his claim, he is none-

Administration of the Trading with the Enemy Act, Senate Committee on the Judiciary, pursuant to S. Res. 245, 82d Cong., 2d Sess., as amended by S. Res. 47, and S. Res. 120, 83d Cong., 1st Sess.— contain any suggestion that judicial review was contemplated in connection with such claims.

[12] This section, which requires the Custodian to publish in the Federal Register a 30-day notice of his intention to return vested property to claimants other than residents of the United States or domestic corporations, provides that publication of such notice "shall confer no right of action upon any person to compel the return of any such property," and further that any such notice may be revoked by the Custodian by appropriate publication in the Federal Register.

theless entitled to such review on the issue of his *eligibility* under the § 32 (a)(2)(D) proviso, the only issue here involved. The *Kristensen* case, involving eligibility for suspension of deportation under § 244 of the Immigration and Nationality Act (66 Stat. 214, 8 U. S. C. § 1254), bears little resemblance to the situation involved here. See *Heikkila* v. *Barber,* 345 U. S. 229, 233; *Switchmen's Union* v. *National Mediation Board,* 320 U. S. 297, 301. The structure of § 32 (a) does not permit of any such distinction in this case. Compare H. R. 4840, 78th Cong., 2d Sess., § 32 (a). Indeed, it is not certain whether petitioner's theory of partial reviewability would apply only to the proviso with which he is concerned; to all of paragraph (2), but only to that paragraph; or to paragraphs (1), (3), and (4) as well (see pp. 667–668, and notes 1–4, *ante*). None of these alternatives is acceptable. As to the first and second, no reason appears why either of these categories should be singled out for special treatment, while the third would make reviewable determinations which involve factors with which only the Executive Branch can satisfactorily deal. See, *e. g.,* Hearings before Subcommittee No. 1 of the Committee on the Judiciary, House of Representatives, on H. R. 3750, 79th Cong., 1st Sess., p. 4 (proof of pre-vesting ownership); Hearings before Subcommittee No. 1 of the Committee on the Judiciary, House of Representatives, on H. R. 5089, 79th Cong., 2d Sess., p. 37 (proof of "cloaking" arrangements). Beyond that, we think the congressional decision to spell out in some detail certain limitations on the power it was conferring on the Executive was not designed to bestow rights on claimants, arising out of an assertedly too-narrow reading by the Executive of the discretionary power given him. Rather we consider the specifications of paragraphs (1) through (4) as designed to provide guides for the Executive, thereby lessening the administrative burden of decision. See Hearings before a

Subcommittee of the Senate Committee on the Judiciary, on S. 2378 and S. 2039, 79th Cong., 2d Sess., p. 19.

We conclude that the Trading with the Enemy Act excludes a judicial remedy in this instance, and that because of this, as well as because of the discretionary character of the administrative action involved, the Administrative Procedure Act, by its own terms (*ante,* p. 670), is unavailing to the petitioner.[13]

Petitioner's other contentions may be dealt with shortly. It is urged that judicial review is in any event available because the complaint, whose allegations as the case comes here must be taken as true, alleges that the administrative action was arbitrary and capricious. However, such conclusory allegations may not be read in isolation from the complaint's factual allegations and the considerations set forth in the administrative decision upon which denial of this claim was based. See *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 401. So read, it appears that the complaint should properly be taken as charging no more than that the administrative action was erroneous. This is not a case in which it is charged either that an administrative official has refused or failed to exercise a statutory discretion, or that he has

---

[13] The fact that in a third-party suit affecting returned property, the courts must, in accordance with § 32 (e), determine, if relevant, the claimant's eligibility under the § 32 (a) (2) (D) proviso, does not militate against this conclusion. First, it is far from clear that in such circumstances the doctrine of primary jurisdiction would not call for a referral of that issue to the Attorney General. Cf. *United States Navigation Co.* v. *Cunard S. S. Co.,* 284 U. S. 474; *Far East Conference* v. *United States,* 342 U. S. 570; *Maritime Board* v. *Isbrandtsen,* 356 U. S. 481, 496–498. Moreover, even if necessity compelled judicial determination in suits between private parties of the issue ordinarily disposed of under § 32 (a), we would not be justified, in the context of the other provisions of this statute, in inferring from that a congressional willingness to have Executive determinations reviewed in court.

acted beyond the scope of his powers, where the availability of judicial review would be attended by quite different considerations than those controlling here. Cf., e. g., *Accardi* v. *Shaughnessy*, 347 U. S. 260; *Leedom* v. *Kyne*, 358 U. S. 184.

Finally, petitioner's reliance on the Declaratory Judgment Act carries him no further. Section 7 (c) of the Trading with the Enemy Act embraces that form of judicial relief as well as others. Additionally, the Declaratory Judgment Act is not an independent source of federal jurisdiction, *Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U. S. 667, 671; the availability of such relief presupposes the existence of a judicially remediable right. No such right exists here.

We conclude that the Court of Appeals correctly held that the District Court lacked jurisdiction over this action, and that its judgment must be

*Affirmed.*

MR. JUSTICE BRENNAN, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE DOUGLAS join, dissenting.

This Court has gone far towards establishing the proposition that preclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred. See *Leedom* v. *Kyne*, 358 U. S. 184; *Harmon* v. *Brucker*, 355 U. S. 579; *Stark* v. *Wickard*, 321 U. S. 288; *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94. Generalizations are dangerous, but with some safety one can say that judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated.[1] To be sure, a clear command of the statute will preclude review; and such a command of the statute may be inferred from its pur-

---

[1] See Jaffe, The Right to Judicial Review, 71 Harv. L. Rev. 401, 432.

pose, though *Leedom* v. *Kyne, supra,* where I thought nonreviewability proved from the congressional purpose, shows that the Court is far from quick to draw such a conclusion. I cannot agree that the statute here gives any clear direction that this administrative determination that as a matter of law petitioner was ineligible for the exercise of discretionary relief under § 32 (a) should not be reviewable by the courts. Questions as to the scope of that review, of course, are not now before us; simply whether the power exists at all.

Section 7 (c) of the Act states that the Act's remedies shall be "[t]he sole relief and remedy" of claimants of vested property, and, to be sure, this language is "all-inclusive," *Becker Steel Co.* v. *Cummings,* 296 U. S. 74, 79. Let us, then, take a close and fully-focused look at what those remedies include, and compare them with what petitioner seeks.

Section 9 (a) of the Act, under which petitioner of course makes no claim, provides a judicial remedy for those who are not enemies and not allies of enemies; they may sue in equity for the return of their property.[2]  Sec-

---

[2] In pertinent part, § 9 (a) provides:

"(a) Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall deter-

tion 9 (c) gives the same remedy to certain classes of enemies.[3] But it is apparent from both these provisions that they contemplate an independent judicial remedy—a suit to return property; not an action to review certain determinations of administrative officers. There is not even a provision that application must be made for admin-

mine said claimant is entitled: *Provided,* That no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the United States District Court for the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to which the court shall determine said claimant is entitled. . . ." 40 Stat. 419, as amended, 50 U. S. C. App. § 9 (a).

[3] Section 9 (c) provides:

"(c) Any person whose money or other property the President is authorized to return under the provisions of subsection (b) hereof may file notice of claim for the return of such money or other property, as provided in subsection (a) hereof, and thereafter may make application to the President for allowance of such claim and/or may institute suit in equity to recover such money or other property, as provided in said subsection, and with like effect. The President or the court, as the case may be, may make the same determinations with respect to citizenship and other relevant facts that the President is authorized to make under the provisions of subsection (b) hereof." As added, 41 Stat. 980, as amended, 50 U. S. C. App. § 9 (c).

The relevant classes of enemies are set forth in § 9 (b). Petitioner makes no claim under § 9 (c).

istrative relief before suit is brought. There simply is a requirement for the filing of a notice of claim, which the statute clearly distinguishes from making an application for an administrative return, the latter being optional. *Draeger Shipping Co.* v. *Crowley,* 49 F. Supp. 215; *Duisberg* v. *Crowley,* 54 F. Supp. 365. See *Stoehr* v. *Wallace,* 255 U. S. 239, 246. Even where the applicant chooses to seek an administrative return, suit may be instituted before the administrative action is completed. The administrative remedy and the judicial remedy are each completely independent of the other; Congress has made this clear even to the extent of putting an "and/or" on the statute books. In no sense, then, can the independent judicial remedy of § 9 be said to be a judicial review of administrative action. It is independent of any administrative action's being taken. It requires the courts to make a plenary, *de novo* adjudication of all the controverted issues as they would in any lawsuit between citizens.

Section 32 (a), under which petitioner has applied for relief, on the other hand provides simply for an administrative remedy. That it does, of course, under § 7 (c) precludes the inference of any independent judicial remedy such as § 9 provides. But there is no reason why it should preclude the inference that administrative action taken under it should be subject to judicial review. The courts have developed many principles defining and limiting the quantum of judicial review that may be afforded administrative adjudication. This generally narrow character of judicial review, in contrast to an independent lawsuit directed at the same end as an administrative adjudication, points up the distinction between the independent action under § 9 and what is contended for here. In the latter, the courts cannot order the return of the property. They simply may say that the administrator cannot stand on the ground he gave for not returning it.

See *Greene* v. *McElroy*, 360 U. S. 474, 510 (concurring opinion). The former is clearly precluded, but the latter hardly is. The approach to interpretation that cases like *Kyne, Harmon* and *Stark* symbolize should indicate that judicial review of the administrative action under § 32 (a) is available. Section 7 (c) is by no means offended by this since this construction recognizes that the sole remedy under § 32 (a) is administrative in nature, but attaches to that administrative remedy the general attribute of administrative remedies in our system—judicial review.

The Court points to the legislative history of § 32 (a) as indicating a contrary conclusion. It says that a judicial remedy was originally provided for in early versions of the bill which added § 32 (a) to the statute, but that the final enactment omitted it. This would be very relevant if what had been originally contained in the bill had been a provision for judicial review of action taken under § 32 (a), such as what petitioner now contends is implicit. But it was not; it was rather a provision for an independent judicial remedy, patterned entirely in the style of § 9.[4]

---

[4] In fact, the independent judicial remedy was not even put *in pari materia* with the administrative remedy under § 32 (a). It simply provided:

"After filing a claim with the Alien Property Custodian pursuant to subsection (a) hereof, a claimant may institute a suit in equity in the United States District Court for the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Custodian shall be made a party defendant), to establish that he is not a foreign country or national thereof as defined pursuant to subsection (b) of section 5 hereof, and to establish the interest, right, or title claimed.. The claimant shall obtain a judgment or decree ordering the return to him of the interest, right, or title to which the court shall determine he is entitled, but only if the court shall adjudicate that he is not a foreign country or national thereof . . . ." § 32 (b), H. R. 4840, in Hearing before Subcommittee No. 1, Committee on the Judiciary, House of Representatives, on H. R. 4840, 78th Cong., 2d Sess., pp. 1–2.

That it was omitted of course adds another proof that there can be no independent judicial action to get a return under § 32 (a); but it does not tell us that normal judicial review into administrative action under § 32 (a) is to be foreclosed. Mr. Markham's remarks, quoted by the Court, are of course explicable on the ground that there was no counterpart of § 9's provision for an independent lawsuit in § 32 (a). In fact, they were spoken in response to a question whether "the individual whose property has been taken or affected can appeal to the courts of the land to have his equity determined." Hearing before Subcommittee No. 1, Committee on the Judiciary, House of Representatives, on H. R. 3750, 79th Cong., 1st Sess., p. 13. The question is a good description of the functions of courts under § 9. It does not describe the functions of courts exercising a review function of administrative action under § 32 (a). The subsequent legislation which the Court mentions as having failed of passage, S. 2544, 82d Cong., 2d Sess.; S. 34, 83d Cong., 1st Sess., was not legislation to provide judicial review, but to afford an independent judicial remedy similar to § 9.[5] Thus it is apparent that the alternative that was presented to Congress and rejected clearly enough was not ordinary judicial review of determinations under § 32 (a), but independent judicial action of a sort comparable to § 9's.

The Court does not demonstrate any policy on which Congress may have been acting and from which it might be inferred that judicial review was impliedly precluded under § 32. Congress clearly precluded independent law-

---

[5] This legislation seems to have contemplated a judicial remedy much broader than that of the early provisions before the addition of § 32, see note 4, *supra*. The bills covered "[a]ny person eligible for a return under this section" (§ 32) and provided that such a person, after filing a notice of claim, might "institute a suit in equity to recover such money or other property in the manner provided by subsection 9 (a) hereof and with like effect."

suits, but there is no demonstration that it acted in pursuance of any purpose which would be broad enough impliedly to negate judicial review of administrative action as well. So there is no reason why the general principle should not apply: "Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers." *Harmon* v. *Brucker, supra,* at 581–582.

There is then clearly established jurisdiction to review under the general principles which find expression in § 10 of the Administrative Procedure Act; the statute does not "preclude judicial review." 60 Stat. 243, 5 U. S. C. § 1009. But the Court also holds that, within the meaning of § 10, "agency action is by law committed to agency discretion." Since want of jurisdiction in the District Court is found, I take it the Court holds that the question, review of which is now sought, which is an issue of statutory construction, is totally and exclusively for the administrative officers to determine—not simply that the courts are to give their determination of this question of law considerable weight. Cf. *Labor Board* v. *Hearst Publications, Inc.,* 322 U. S. 111, 130; *Gray* v. *Powell,* 314 U. S. 402, 411. Once it is established that the statute does not preclude judicial review, this conclusion seems to me untenable. The issue is a question of law; the construction of a detailed and moderately specified standard. It is not like the ultimate determination that the return be "in the interest of the United States," § 32 (a)(5), which is clearly where the ultimate reservoir of discretion lies under § 32 (a). This determination was never reached. We need not speculate about the breadth of judicial inquiry in judicial review where the administrative decision not to return the property is based on that ground, or is based on one of the other grounds under the statute. The quantum of review can be adjusted to the problem before the courts. Here the determination not

684

to return was based on a holding that petitioner did not come within the first proviso to § 32 (a)(2)(D). The proviso's terms were viewed administratively not as guides to an administrative discretion but as legal standards. Under commonplace principles, the determination must stand or fall on that basis. It may be that the novelty of the standards of that proviso (see Subcommittee Hearings, Senate Committee on the Judiciary, on S. 2378 and S. 2039, 79th Cong., 2d Sess., p. 19) should teach the courts to give considerable weight to the administrative construction of the law. But that is not to say, as the Court does, that it is so much a matter of administrative discretion as to preclude judicial review.[6] To my mind, *McGrath* v. *Kristensen,* 340 U. S. 162, is squarely in point. There there was a statute which bristled with discretion as much as this one. But where the administrative decision under it was not rendered on the basis for the exercise of discretion the statute provided, but as a matter of law, judicial review was available. We retreat from established principles of administrative law when we say it is unavailable here. The judgment of the Court of Appeals should be reversed, and the order of the District Court declining to dismiss the complaint for want of jurisdiction should be affirmed.

---

[6] One of the grounds on which the administrative officials may decline return under § 32 (a) is that the claimant was not the owner of the property at the time it was vested, or the successor thereof. § 32 (a)(1). Is this simply to be deemed a guide to the administrative discretion in granting returns, or a legal standard?