**Horst VON HENNIG, Anciilary Executor of the Estate of Carlo von Wedekind, Deceased, Plaintiff,**

v.

**William P. ROGERS, Attorney General of the United States, Defendant.**

**Civ. A. No. 1819–49.**

United States District Court
District of Columbia.

Oct. 17, 1960.

James H. Mann, Washington, D. C., for plaintiff.

Mary P. Clark, Irving Jaffe, and Ernest S. Carsten, Department of Justice, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action under Section 9(a) of the Trading with the Enemy Act, Title 50 of the U.S.C.A.Appendix, § 9(a), to secure the return of certain property seized by the Alien Property Custodian during World War II, on the ground that it was owned by an enemy.

The action was originally brought by Carlo von Wedekind. He died during the pendency of the action, and the present plaintiff, Horst von Hennig, was substituted as party plaintiff in his capacity as ancillary executor of the estate of the original plaintiff. The property that was seized by the Alien Property Custodian is capital stock of Empire State Properties and Trading Corporation, which is a corporation organized under the laws of the State of New York. It is a holding company or an investment company controlled entirely by the family of which the original plaintiff was a member. It owned certain investments previously belonging to the family. It is claimed that the value of the seized shares is approximately $1,100,000.

The defenses of the Government may be divided into two groups: first, objections to the standing of the plaintiff to maintain this action, it being contended by the Government that the original plaintiff was not an eligible claimant under the above mentioned statutory provisions; and second, defenses going to the merits of the claim. On motion of the defendant, to which the plaintiff consented, an order was made by the Court directing a separate trial of the issue as to the status of the original plaintiff in advance of the trial of the remaining issues. This issue is now being tried, the question being whether under Section 9(a) of the Trading with the Enemy Act the original plaintiff was an eligible or qualified person who might maintain such a suit.

The pertinent provisions of Section 9(a) permit an eligible claimant to institute a suit in equity in this Court to establish his right, title and interest to property that has been seized by the Alien Property Custodian, and provide that if it is so established the Court shall order the payment, conveyance or delivery of the property, as the case may be, to the plaintiff. Eligible claimants are defined in this section as "any person not an enemy or ally of enemy". Section 2 (a) of the same Act defines the word "enemy" as including any individual, partnership or other body of individuals of any nationality resident within the territory of any nation with which the United States is at war, or resident outside of the United States and doing business within such territory. There are other provisions in that section not here material.

It is claimed by the Government that the original plaintiff was a resident outside of the United States, doing business within the territory of nations with which the United States was at war, namely, Italy and Germany. Consequently, the issue to be determined at this trial is whether the original plaintiff was a person residing outside of the United States and doing business within Italy or Germany, or both. Most of the facts are not in dispute, although inferences to be drawn from them are in controversy. The trial has been greatly simplified, not only by the cooperation of counsel, but as a result of a very thorough and exhaustive pretrial conducted by the Assistant Pretrial Examiner of this Court, which culminated in a very comprehensive and detailed pretrial order. In addition, there were certain further facts stipulated.

The basic facts are that the original plaintiff, Carlo von Wedekind, was born in Sicily of German parents. He apparently had dual citizenship at birth, but elected to be a citizen of Germany, as it is stipulated that he was a citizen of Germany. From some time prior to December 1941, when this country entered World War II, until the time of his death in 1957, Carlo von Wedekind resided in Switzerland. The grandfather of the

original plaintiff had organized a concern or a firm under Italian law in Palermo, Sicily, known as Carlo Wedekind & Company. This concern conducted a retail business throughout Italy in various domestic appliances, such as radios, refrigerators, motors, et cetera, as well as in citrus fruits. This business continued during the years 1941 and 1942, after this country entered the war.

Carlo Wedekind & Company is what is known under Italian law as a Societa in nome Colletivo. Testimony was given by experts in the law of Italy as to the status of such a Societa from a legal point of view. It is of course a mistake to try to test Roman law concepts by common law ideas. Nevertheless, useful analogies may be drawn between the two systems.

A Societa in nome Colletivo under Italian law is an association of individuals. Its firm name must consist of the name of one or more members of the concern. Every member of the concern is liable for its debts if creditors, after endeavoring to satisfy their demands out of the assets of the firm, find themselves unable to do so. On the other hand, such an association may sue and be sued in its common name as though it were an entity. There seems to be some uncertainty among Italian jurists as to whether such an association is or is not a juridical person or a separate artificial entity.

The Court is of the opinion that an association such as has been described is analogous to a general partnership under American law, rather than to a corporation. It lacks one of the most vital indicia of a corporation, namely, freedom from liability for its debts on the part of individual members. The fact that the association may sue or be sued in its common name is not conclusive of the matter. There are many instances in which a partnership under American law may sue and be sued in its common name, as is indicated by Rule 17, for example, of the Federal Rules of Civil Procedure, 28 U.S.C.A. So too, in some of the States, a partnership is now given capacity to sue or be sued in its common name.

Carlo von Wedekind, the original plaintiff, owned a half interest in this concern, the other half being owned by a brother who lived in Germany. Carlo von Wedekind gave a power of attorney to one Arturo Mueller to manage the business of the concern, which Mueller continued to do from 1935 until 1943. From time to time Arturo Mueller reported to the original plaintiff and conferred with him concerning the affairs of the company, asking for his advice and directions. One of the witnesses described Carlo von Wedekind as the supervisor though not the manager of the concern. In view of these facts the Court reaches the conclusion that the original plaintiff, Carlo von Wedekind, was carrying on business in Italy through Carlo Wedekind & Company.

Even if under the Italian law a Societa in nome Colletivo were to be regarded as a corporation, this circumstance would not advance the plaintiff's cause. If it was a corporation, it would have been a closely held family corporation in which the original plaintiff had a half interest and the activities of which were continuously supervised by him. Under these circumstances equity would pierce the veil of the corporate entity. Even under these circumstances, the Court would conclude that the original plaintiff was carrying on business in Italy during the crucial years.

It is further urged by the Government that the original plaintiff carried on business in Germany in the following manner. A Swiss corporation known as Arobiga A.G. had its principal place of business in Switzerland. It entered into a contract with a German corporation known as Chemieprodukte A.G., having its principal place of business in Berlin, Germany, for the exploitation of certain patents owned by Arobiga. The contract is not available and therefore was not produced. Its terms are unknown. Chemieprodukte from time to time issued licenses for the use of these patents in foreign countries. Arobiga received from Chemieprodukte a specified percentage of the net profits realized by

Chemieprodukte from such licenses. Evidence was introduced to the effect that the business of Arobiga was dominated and directed by the original plaintiff.

The Government contends that these facts are sufficient to justify a conclusion that the original plaintiff was doing business in Germany and other enemy-occupied territories. The Court is of the opinion, however, that this inference is not warranted on the basis of the evidence in this case. First, there is no evidence as to what the connection was between the original plaintiff and Arobiga, other than the fact that the original plaintiff was directing its activities. More than that, however, there is no evidence as to whether Chemieprodukte was issuing licenses as agent of Arobiga or whether it was doing so as an independent contractor. If the former was the case, an inference might well be drawn that Arobiga was doing business in Germany and other enemy-occupied territory. If the latter is the case, no such deduction is justified. As just stated, there is no evidence on this point, although the fact that Arobiga was receiving from Chemieprodukte only one-third of the net profits from the licenses would seem to indicate that the two concerns were independent contractors rather than that they maintained the relation of principal and agent.

■ Thus the Court concludes that the original plaintiff, on the basis summarized, was doing business in Italy during the crucial war years. It is urged, however, as a matter of law in behalf of the plaintiff that doing business in Italy was not within the definition of Section 2 of the Act, on the theory that Italy should not be regarded as enemy territory. This contention is predicated on Section 1 of the Act of August 5, 1947, 61 Stat. 784. That section authorized the President to return, in accordance with the procedures provided for in Section 32 of the Trading with the Enemy Act, as amended, any property that before its

seizure was the property or interest of Italy or a citizen or subject of Italy, or a corporation or association organized under the laws of Italy.

There are two difficulties with this contention of the plaintiff. One is that the authority granted to the President by the Congress by this statute, was extended only to such property as had been the property of a citizen or subject of Italy. The original plaintiff was a citizen of Germany. The second difficulty the plaintiff confronts in this respect is that this authority is limited to a return of property in accordance with the procedures provided for in Section 32 of the Trading with the Enemy Act. That section authorized the President to return seized property of certain types to individuals included within certain specified classes. The Supreme Court has ruled, however, that this section confers on the President or his nominee certain administrative discretion and that this discretion is not subject to judicial review. Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478. No action may be maintained, therefore, under Section 32 if the President or his nominee—in this instance the Attorney General—declines, in the exercise of his discretion, to return any property referred to in that provision. Consequently, this Court is limited to the restrictions of Section 9(a) and the definition contained in 2(a) of the Act in determining whether this action may be maintained.

■ The Court concludes that the original plaintiff was not a qualified claimant under Section 9(a) of the Trading with the Enemy Act, on the ground that during the crucial war years he was doing business in enemy territory, to-wit, Italy. In view of these considerations the Court will render judgment dismissing the action on the merits.

The transcript of this oral decision shall constitute the findings of fact and conclusions of law. Counsel will submit an appropriate judgment.