**HARUE SAKAMOTO, Appellant,**

v.

**Robert F. KENNEDY, Attorney General of the United States, as Successor to the Alien Property Custodian, Appellee.**

**No. 16770.**

United States Court of Appeals Ninth Circuit.

Dec. 26, 1961.

Genro Kashiwa, Honolulu, Hawaii, and Mas Yonemura, Oakland, Cal., for appellant.

Dallas S. Townsend, Director, Office of Alien Property, Arthur R. Schor, Chief, Litigation Section Office Alien Property, Lillian C. Scott, Atty., Dept. of Justice, Washington, D. C., and Louis B. Blissard, U. S. Atty., Honolulu, Hawaii, for appellee.

Before CHAMBERS, JERTBERG and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This suit is the sequel to an unsuccessful application by Harue Sakamoto to the Attorney General for the proceeds of certain property seized by the Alien Property Custodian during World War II under the Trading with the Enemy Act (40 Stat. 411, 50 U.S.C.A.Appendix, § 1 et seq.), hereinafter referred to as the "Act."

Harue Sakamoto, the former owner of the property and the appellant here, by reason of her birth in the Territory (now State) of Hawaii, was a citizen of both the United States and Japan. In 1947 she lost her United States citizenship by voting in a Japanese political election (66 Stat. 267, 8 U.S.C.A. § 1481(a) (5)) but

regained it by naturalization upon complying with Public Law 515 shortly after that law was enacted in 1954, 8 U.S.C.A. § 1438 note.[1] She then filed her application in accordance with the provisions contained in section 32(a) (2) (D) of the Act which authorize the return of property vested by the Alien Property Custodian (or the net proceeds in the event it was sold) upon an administrative determination by the Attorney General that the applicant is "an individual who at all times since December 7, 1941, was a citizen of the United States. * * * *" Appellant's position was that "a person regaining United States citizenship under P.L. 515 reacquires her citizenship status not only prospectively from and after the date of naturalization, but retroactively as of the date of its loss and there is no period between its loss and reacquisition, when the person would be an alien." However, the Attorney General, being of the opinion that P.L. 515 did not operate retroactively to fill the void in her United States citizenship between 1947 to 1954, deter-

mined that Harue Sakamoto had not been a citizen of the United States "at all times since December 7, 1941" and rejected the application.

In the District Court appellant did not seek judicial review of the ruling of the Attorney General; rather, she asked the court by declaratory judgment pursuant to 8 U.S.C.A. § 1503(a) [2] to adjudicate her citizenship status during the interval in question. We do not know what prompted appellant to follow this course.[3] Perhaps she did so because the Act itself makes no provision for such a review and the only court which up to that time had considered the effect of section 7(c), limiting "[t]he sole relief and remedy" of a claimant to "that provided by the terms of this Act", had decided that Congress did not intend to extend the right of judicial review ordinarily made available under the Administrative Procedure Act (60 Stat. 243, 5 U.S.C.A. § 1001 et seq.) to proceedings under section 32(a). McGrath v. Zander, 85 U.S.App.D.C. 334, 177 F.2d 649 (1949). See also, Tiede-

1. In 1939 appellant had gone from Hawaii to Japan where she remained until her return in 1952.

2. 8 U.S.C.A. § 1503(a) in part reads·

   "If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 [the Declaratory Judgment Act], against the head of such department or independent agency for a judgment declaring him to be a national of the United States, * * *."

3. The "summary power to seize property * * * believed to be enemy-owned is rescued from constitutional invalidity under the Due Process and Just Compensation Clauses of the Fifth Amendment only by those provisions of the Act which afford a nonememy claimant a later judicial hearing as to the propriety of the seizure." Societe Internationale etc. v. Rogers, 357 U.S. 197, 211, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 255 (1958). The sole

provision of the Act for such a judicial remedy is contained in section 9. That section confers jurisdiction on the district courts to entertain a suit in equity by a nonenemy to establish his right to, and secure the return of, property vested under this Act during World War II; but section 33 requires that any such suit be commenced (1) within two years after the seizure of the property unless a claim for its return be filed within that time, or (2) by April 30, 1949, whichever is later. The instant suit, if treated as one coming under section 9(a), was barred by the limitations contained in section 33, for the property was vested on November 24, 1944, no claim for its return was filed until 1955 and this suit was commenced in 1959.

Sakamoto was clearly aware of the consequences attending the running of this limitation (Brownell v. Morizo Nakashima, 243 F.2d 787 (9th Cir. 1957)), for she was careful to point out in her brief that "[t]his is not a suit under Section 9 (a) of the Trading with the Enemy Act. It is a suit requesting the court to review the decision of the Office of Alien Property of the Department of Justice because of an obvious error of law."

mann v. Brownell, 222 F.2d 802, 96 U.S. App.D.C. 9 (1955).[4] However, regardless of the reason for appellant's choice of remedy, the district court entered judgment dismissing the action with prejudice upon the ground, among others, of lack of jurisdiction. We conclude the ruling was right. It was squarely held in Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960), a case decided after appellant had perfected this appeal and shortly before her brief was filed, that a court is powerless to entertain an action for declaratory relief when the effect would be to partially review an Executive decision under the Trading with the Enemy Act.[5]

The judgment is affirmed.

4. The Supreme Court has now settled any question whether recourse might be had to the Administrative Procedure Act to obtain review of proceedings involving section 32 claims for return of vested property by its pronouncement in Schilling v. Rogers, 363 U.S. 666 (1960) at 676, 80 S.Ct. 1288, at 1295, that:

"We conclude that the Trading with the Enemy Act excludes a judicial remedy in this instance, and that because of this, as well as because of the discretionary character of the administrative action involved, the Administrative Procedure Act, by its own terms (ante, p. 670 [80 S.Ct. p. 1292]), is unavailing to the petitioner."

5. "Finally, petitioner's reliance on the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, carries him no further. Section 7(c) of the Trading with the Enemy Act embraces that form of judicial relief as well as others. Additionally, the Declaratory Judgment Act is not an independent source of federal jurisdiction, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 [70 S.Ct. 876, 94 L. Ed. 1194]; the availability of such relief presupposes the existence of a judicially remediable right. No such right exists here." Schilling v. Rogers, 363 U.S. 666 at 677, 80 S.Ct. 1288, at 1295 (1960).

The applications of both Schilling and Sakamoto were based on section 32(a) (2) (D) of the Act, but they differ in one respect. Schilling's application was based on that part of the section relating to enemy aliens who were victimized during World War II by their own governments, while Sakamoto's is based on the part relating to expatriate citizens of the United States. The Supreme Court has sometimes recognized partial review of administrative proceedings in areas where the Executive ostensibly has absolute discretion, by allowing declaratory relief with respect to the limited question of a person's "eligibility" for certain rights; perhaps coincidentally, the eligibility question has usually centered on the person's status as an American citizen. See, McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950) (claimant's "eligibility" for naturalization as related to Attorney General's discretionary power to deport); Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320 (1939); (claimant's status as a citizen as related to Secretary of State's discretionary power to withhold passport). Furthermore, there is special statutory authorization for declaratory relief on the question of a person's status as an American citizen. See, n. 2, supra. But the Court, in Schilling, indicated that the exclusive purpose of section 32, read in conjunction with section 7(c) of the Act, is to provide "guides for the Executive" and not to create justiciable rights, and distinguished Kristensen on these grounds. Thus, the Court's conclusion precludes any type of review on the question of a person's status as an American citizen under section 32. This conclusion seems consistent with the intent of Congress when it amended section 32(a) (2) (D) in 1950 to provide for the return of property to American citizens, since the Committee on the Judiciary specially noted that section 32 claims are subject to the "unreviewable discretion" of the Executive. 1950 U.S.Code Cong. & Adm.News, p. 3976.