JOHN A. JARVEY, Chief Judge, UNITED STATES DISTRICT COURT
This matter comes before the Court pursuant to Defendant's October 2, 2017, Motion to Dismiss. [Dkt. No. 9.] Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant asks the Court to find that Plaintiff has failed to state a claim upon which relief can be granted. On November 17, 2017, Plaintiff filed her resistance. [Dkt. No. 18.] Defendant filed a reply on December 26, 2017. [Dkt. No. 21.] For the reasons that follow, Defendant's Motion to Dismiss is GRANTED .
I. BACKGROUND
Plaintiff Jeri Pickrell filed suit against Defendants LivaNova PLC, Sorin Group Deutschland GmbH, and Sorin Group USA, Inc. on May 31, 2017. The suit, on behalf of Plaintiff herself and all similarly situated persons, alleged two counts: Medical Monitoring (Count I) and Declaratory Relief Pursuant to 28 U.S.C. § 2201, et seq. (Count II). On September 25, 2017, Plaintiff dismissed LivaNova PLC as a defendant. On October 11, 2017, the Court dismissed Sorin Group Deutschland GmbH as a defendant. Therefore, Sorin Group USA, Inc. is the only remaining defendant.
LivaNova Holding USA, LivaNova PLC, and Sorin Group Deutschland GmbH (hereinafter Defendant) sold a 3T Heater-Cooler System (hereinafter 3T machine) to both Mercy Medical Center (MMC) in Des Moines, Iowa, and University of Iowa Hospitals and Clinics (UIHC) in Iowa City, Iowa. The 3T machine was used to regulate blood temperature during certain surgeries. On February 2, 2016, UIHC announced *867 that approximately 1,500 of its surgery patients (between the dates of January 1, 2012, and January 22, 2016) had been exposed to a potentially fatal subspecies of non-tuberculous Mycobacterium (NTM) because of alleged defects in the 3T machine. On August 29, 2016, MMC announced that 2,600 of its surgery patients (between the dates of July 1, 2012, and July 1, 2016) had been potentially exposed to NTM because of the 3T machine.
Both MMC and UIHC posted information regarding NTM and the 3T machine on their websites. Both websites also included information regarding the necessity of follow-up treatment and advised that asymptomatic patients do not require testing or treatment. Although the chances of contracting NTM are extremely low (estimated to be less than one percent by the United States Centers for Disease Control and Prevention), due to the slow-growing nature of the bacterium, it can take anywhere from two weeks to five years for symptoms of an infection to develop.
On June 19, 2016, Plaintiff underwent open heart surgery at MMC, during which a 3T machine was used. Therefore, Plaintiff's surgery fell within the exposure window provided by MMC. Plaintiff has not suffered from any symptoms related to NTM. Additionally, she has not been diagnosed with NTM. In her Complaint, Plaintiff specifically states that her suit only involves individuals "who are currently asymptomatic for nontuberculous mycobacterium (or "NTM") infection" and that "[c]laims for actual injury from an NTM infection are excluded from the claims brought in this class action." [Dkt. No. 1 at ¶ 52.] Accordingly, Plaintiff has not alleged any injury from Defendant's acts.
II. LEGAL STANDARD FOR MOTIONS TO DISMISS
Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) ; see also Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Braden v. Wal-Mart Stores, Inc. , 588 F.3d 585, 594 (8th Cir. 2009). Federal Rule of Civil Procedure 12(b)(6) allows for dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "[a] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Braden , 588 F.3d at 594 (citing Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ) ). In deciding a motion to dismiss under Rule 12(b)(6), the court must assume all factual allegations contained in the complaint are true. Ashcroft , 556 U.S. at 669, 129 S.Ct. 1937 (citing Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ).
III. ANALYSIS
Defendant moves to dismiss all of Plaintiff's claims. First, Defendant alleges that Plaintiff's medical monitoring claim must be dismissed because Iowa law does not recognize a claim for medical monitoring. Additionally, Defendant claimed that even if Iowa did recognize a claim for medical monitoring, Plaintiff fails to allege any actual need for medical monitoring. Second, Defendant alleged that Plaintiff's declaratory relief claim should be dismissed because she lacks a substantive basis on which to seek declaratory relief. Furthermore, Defendant alleges that Plaintiff lacks standing to seek the requested declaratory relief.
A. Medical Monitoring Claim
The Court's jurisdiction to hear this case is based on diversity jurisdiction.
*868 28 U.S.C. § 1332. Pursuant to 28 U.S.C. § 1332, a federal court has jurisdiction over matters where the parties are "citizens of different states" and the amount "in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). In diversity cases, this Court is required to apply state law, as determined by the court of last resort in that state. Erie Railroad Co. v. Tompkins , 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ; Smith v. ConocoPhillips Pipe Line Co. , 801 F.3d 921, 925 (8th Cir. 2015) (quoting Eichenwald v. Small , 321 F.3d 733, 736 (8th Cir. 2003) ). When a particular question of law has not been effectively decided by the highest state court, federal courts in diversity actions must predict what the highest state court would decide if confronted with the same question. Allstate Indem. Co. v. Rice , 755 F.3d 621, 623-24 (8th Cir. 2014).
Both Plaintiff and Defendant acknowledge that Iowa law has yet to recognize a claim for medical monitoring; thus, Plaintiff's claims in Count I are not based on an existing cause of action under State of Iowa law. Therefore, this Court must predict what the Iowa Supreme Court would decide if confronted with a claim of medical monitoring. In paragraphs 64 and 65 of the Complaint, Plaintiff bases her exposure to NTM on Defendant's negligence. Thus, this is a claim rooted in negligence.
In Iowa, a cognizable negligence claim must include an actual injury suffered by the plaintiff. See, e.g. , Vossoughi v. Polaschek , 859 N.W.2d 643, 649-650 (Iowa 2015) (finding that legal malpractice claims, which "sound in negligence", must include a showing that "the attorney's breach of duty caused 'actual injury, loss, or damage' ") (quoting Ruden v. Jenk , 543 N.W.2d 605, 610 (Iowa 1996) ); Phillips v. Covenant Clinic , 625 N.W.2d 714, 718 (Iowa 2001) (finding the traditional elements of a medical negligence action are (1) an applicable standard of care, (2) a violation of this standard, and (3) a causal relationship between the violation and injury sustained (emphasis added) ); Marcus v. Young , 538 N.W.2d 285, 288 (Iowa 1995) (internal citations omitted) (stating "the elements of a negligence claim include existence of a duty to conform to a standard of conduct to protect others, failure to conform to that standard, proximate cause, and damages). This Court finds that the Iowa Supreme Court would be unlikely to adopt a medical monitoring cause of action rooted in a negligence theory, especially absent an actual injury. Due to Iowa's requirement that negligence claims include an actual injury, this Court concludes that the Iowa Supreme Court, if confronted with the opportunity to recognize a medical monitoring cause of action, would either decline to do so or would require an actual injury.
In her Complaint, Plaintiff alleges no injury from Defendant's acts, and she acknowledges that she is asymptomatic. She is requesting damages that are based on a speculative future need for medical treatment and testing that are rooted in a cause of action that does not exist under Iowa law. Accordingly, the Court concludes that the Plaintiff has not stated a claim upon which relief can be granted and, thus, Count I of the Complaint is hereby dismissed. As a result, the Court need not resolve the Defendant's argument that the Plaintiff has no cognizable claim for medical monitoring.
In her Response to the Motion to Dismiss, Plaintiff urges this Court to certify the medical monitoring issue to the Iowa Supreme Court. However, as Defendant argues in its Reply Brief, the Plaintiff has failed to move for certification, so the issue is not ripe for this Court's ruling. The Court, therefore, declines to do so.
*869 B. Declaratory Relief Claim
The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declarations...." 28 U.S.C. § 2201. The Declaratory Judgment Act "does not create any new substantive right but rather creates a procedure for adjudicating existing rights." Western Cas. & Sur. Co. v. Herman , 405 F.2d 121, 124 (8th Cir. 1968) (internal citations omitted). The "actual controversy" requirement of § 2201 is synonymous with the "case or controversy" requirement of Article III, section 2, of the United States Constitution. Steffel v. Thompson , 415 U.S. 452, 458, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ; Marine Equip. Mgmt. Co. v. United States , 4 F.3d 643, 646 (8th Cir. 1993) (holding that the case or controversy requirement applies with "equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief"). The test to determine whether there is an actual controversy within the meaning of the Declaratory Judgment Act is "whether 'there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " Caldwell v. Gurley Refining Co. , 755 F.2d 645, 649 (8th Cir. 1985) (quoting Maryland Cas. Co. v. Pac. Coal & Oil Co. , 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ). The Declaratory Judgment Act does not create a substantive cause of action, and a declaratory judgment is improper where the underlying statute contains no private right of action. See, e.g. , Schilling v. Rogers , 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) ("[T]he Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right."); Herman , 405 F.2d at 124 (8th Cir. 1968) (internal citations omitted).
In her Response to the Motion to Dismiss, Plaintiff makes no argument that she has a claim for declaratory judgment outside of her medical monitoring claim. The Declaratory Judgment Act does not create a cause of action without an underlying claim. As the only underlying claim pled by the Plaintiff is for medical monitoring, which the Court dismissed above, the Plaintiff lacks standing to assert a claim under the Declaratory Judgment Act. Thus, the Court agrees with the Defendant that because there is no cognizable claim for medical monitoring, the Plaintiff cannot bring a claim for declaratory relief, as there is no "actual controversy" before the Court. Accordingly, Count II is also dismissed.
IV. CONCLUSION
To survive a 12(b)(6) motion to dismiss, the Plaintiff's complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) ; see also Twombly , 550 U.S. at 555, 127 S.Ct. 1955. Here, Plaintiff has failed to do so. Additionally, Plaintiff has failed to allege a cause of action upon which to seek declaratory judgment.
Upon the foregoing,
IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED , and the case is hereby dismissed. The Clerk shall enter judgment accordingly.