**GEORGIA POWER COMPANY and Southern Company Services, Inc., Petitioners,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

No. 79–3098.

United States Court of Appeals, Fifth Circuit.

May 15, 1980.

**108**

Troutman, Sanders, Lockerman & Ashmore, John R. Molm, James W. Freeman, Michael Andre Donnella, Atlanta, Ga., for petitioners.

Robert Lewis Thompson, Antitrust Div., Dept. of Justice, Wayne M. Senville and Kathleen M. Dollar, I.C.C., Washington, D. C., for respondents.

Walter J. Suthon, III, New Orleans, La., for Southern Railway Co., et al.

Michael Boudin, Washington, D. C., for intervenors.

Before MORGAN, HENDERSON and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Petitioner seeks review of the ICC's decision not to suspend and investigate a rail freight tariff under § 10707 of the Revised Interstate Commerce Act, 49 U.S.C.A. § 10707 (West Pamphlet 1979).[1] Because we lack jurisdiction to review the Commission's order, we dismiss the petition.

On May 4, 1979, Intervenor Southern Railway Company ("Southern") filed tariff schedules which proposed to increase by five percent its rate on coal shipped from Arco, Tennessee to Harlee, Georgia (the site of Petitioner Georgia Power Company's electric generating plant). On June 18, 1979, protests were filed by Georgia Power Company and Southern Company Services ("Georgia Power"). The protests alleged that the proposed rates were unreasonably high and requested that the Commission suspend and investigate the tariff under § 10707. The Commission's Suspension Board considered the protests in the first instance.[2] In a decision served on June 29, 1979 (the day before the rates were to become effective), the Suspension Board ordered that the rates be investigated and their effectiveness suspended until January 29, 1980. Southern sought reconsideration of the Suspension Board's action. In an order served on August 23, 1979, Division 1 of the Commission, acting in its appellate capacity, vacated the Board's decision to suspend and investigate. Division 1 gave two reasons for its decision. First, finding that "market dominance does not exist because there is effective intra-modal competition," it concluded that "the Commission has no jurisdiction to find that these rates are unreasonably high." Second, it found that Georgia Power had not shown that it was likely to prevail on the merits because "[t]he rates at issue do not appear unreasonable . . . ." In a decision served on October 19, 1979, the full Commission denied Georgia Power's petition for reconsideration and stay of Division 1's order. Georgia Power seeks an order from this Court "setting aside the Commission's finding that market dominance does not exist and the Commission's conclusion that it did not have jurisdiction and directing the Commission to make a proper determination with respect to market dominance." Brief of Petitioners at 11.

■ Only last term, the Supreme Court made it absolutely clear that an ICC decision declining to commence a § 10707 investigation is not subject to judicial review. *Southern Railway Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 60

---

1. Pub.L.No. 95–473, 92 Stat. 1380 (1978) (revising and recodifying Interstate Commerce Act, § 15(8), 49 U.S.C. § 15(8) (1976)).

   Pub.L.No. 95–473 revised and recodified the entire Interstate Commerce Act in 49 U.S.C.A. §§ 10101–11916 (West Pamphlet 1979) without substantive change. For purposes of clarity, all further citations to the Act in this opinion will refer to the current recodified statute.

2. The Commission, under authority of § 10305, has delegated initial consideration of investigation and suspension requests to its employee-composed Suspension Board. *See* 49 C.F.R. § 1011.6(a) (1979).

L.Ed.2d 1017 (1979). *Seaboard* also reaffirmed the Court's prior holdings that the merits of an ICC suspension decision are likewise unreviewable.[3] *Id.* at 2396–97. *See also United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Arrow Transportation Co. v. Southern R. Co.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963); *Lone Star Steel Co. v. United States*, 600 F.2d 492 (5th Cir. 1979).

■ Georgia Power seeks to avoid the import of *Seaboard* in two ways. First, it argues that although the decision not to suspend and investigate is unreviewable, the finding of no market dominance is reviewable because it is a "final" decision by the Commission. Section 10709(b) requires the Commission to make a market dominance determination when a rate is challenged as unreasonably high "within 90 days after the start of a proceeding under § 10707 of this title to investigate the lawfulness of that rate." It further provides that "[a] finding by the Commission that the carrier does not have market dominance is determinative . . . unless changed or set aside by the Commission or set aside by a court of competent jurisdiction." Georgia Power contends that this language indicates that Congress intended to provide judicial review of market dominance decisions.

The flaw in Georgia Power's argument is that in this case, a § 10707 investigation never began because the Commission vacated the Suspension Board's order to suspend and investigate. As a result, § 10709(b) has no application here because by its terms it requires a market dominance decision *"after the start"* of a § 10707 investigation. Thus, the Commission's finding of no market dominance could not have been a final decision to approve rates *after* investigation. Two other provisions of the Act illuminate the true character of the market dominance finding. Section 10707(c) provides that the Commission may suspend a rate only if it determines that "it is likely that the complainant will prevail on the merits." Under § 10709(c), a finding of market dominance is a necessary prerequisite to a finding that rates are unreasonably high. In light of these provisions, it is evident that the Commission, in finding no market dominance, was merely providing an explanation for its decision not to suspend and investigate. Far from being a final decision after investigation, the Commission's decision represents the very sort of "preliminary assessment" of the merits "commonly made in suspension orders," *see United States v. SCRAP*, 412 U.S. 669, 692 n. 16, 93 S.Ct. 2405, 2418, 37 L.Ed.2d 254, and, thus, falls squarely within the holding in *Seaboard*.

■ Second, Georgia Power, citing the Commission's statement that it had "no jurisdiction" to declare the rates unreasonably high since it found that no market dominance existed, argues that the Commission's order falls within the exception to nonreviewability of decisions not to suspend or investigate recognized in *Seaboard*. The *Seaboard* Court, citing *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978), and *Schilling v. Rogers*, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960), recognized that Congress did not intend to preclude judicial review of a legal issue concerning the Commission's authority to exercise or refuse to exercise a statutory discretion. *See* 99 S.Ct. at 2396 n. 11. *See also Lone Star Steel Co. v. United States*, 600 F.2d at 493. Georgia Power argues that the Commission's finding that it had no jurisdiction to consider the reasonableness of the rates was based on an erroneous application of its own market dominance regulations, and that if the market dominance regulations were properly applied, the Commission would have jurisdiction to consider the reasonableness of the

---

3. On the other hand, "a decision by the Commission following a § [10707] investigation to approve or disapprove a set of rates is a judicially reviewable final decision." *Seaboard*, 99 S.Ct. at 2393.

**110**

rates. The problem with Georgia Power's argument is that the Commission's finding that it had no jurisdiction to consider the reasonableness of the rates because it found no market dominance does not involve a *legal* issue concerning the scope of the Commission's authority. Here, as in *Seaboard*, "it is conceded by all that the Commission has authority with respect to rates such as those at issue either to suspend (or investigate) or not to suspend (or investigate) them and that it has exercised its authority." *Id.* at 2396. Georgia Power's real complaint is not that the Commission has refused to exercise a statutory discretion, but that it has exercised that discretion erroneously. Thus, the question Georgia Power asks this court to resolve is precisely the factual question that the *Seaboard* Court unequivocally declared to be nonreviewable—whether the Commission exercised its jurisdiction not to suspend or investigate "correctly under the particular circumstances involved." *Id.* at 2396. Georgia Power's "jurisdictional" argument is a patent attempt to "undermine the Commission's primary jurisdiction by bringing the courts into the adjudication of the lawfulness of rates in advance of administrative consideration." *Id.* at 2397. Because the narrow exception to nonreviewability has no application here, *Seaboard's* holding directly controls this case and the Commission's decision not to suspend or investigate may not be reviewed by this court.

The petition is DENIED.