662 F.2d 314
 MISSISSIPPI PUBLIC SERVICE COMMISSION, Can-Tex Industries,
Todd's Farm Supply, W. E. Walker Stores, A. N.
Fowler and M. S. Stuckey, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents.
 Nos. 81-4407, 81-4410.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 9, 1981.
 
 Gordon P. MacDougall, Washington, D. C., Frank B. Barber, Jackson, Miss., for petitioners.
 Cecelia E. Higgins, I.C.C., Washington, D. C., for respondents.
 John H. Doeringer, Howard D. Koontz, Chicago, Ill., John W. Adams, Jr., Mobile, Ala., for intervenor I.C. Gulf Railroad Co.
 Petitions for Review of Orders of the Interstate Commerce Commission.
 Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 On August 14, 1981, pursuant to the provisions of Section 217(a)(1) of the Staggers Rail Act of 1980 (the "Staggers Act"), now codified at 49 U.S.C. § 10705a, Illinois Gulf Central Railroad Company ("ICG") published a branch line surcharge (the "surcharge") of $275 per car on shipments to or from stations on its line between Silver Creek and Columbia, Mississippi. In accordance with Section 10705a(f), which provides that a surcharge tariff may not become effective less than 45 days from the date it is filed, ICG's surcharge tariff was scheduled to become effective on October 3, 1981. On September 21, 1981, twelve days before the scheduled effective date of the surcharge tariff, petitioners filed with the Interstate Commerce Commission (the "Commission") a Petition for Suspension and Rejection. On September 30, 1981, the Suspension Board of the Commission voted not to suspend or investigate ICG's surcharge, a decision which was affirmed by the full Commission on October 2, 1981. Predictably, the decision of the Commission precipitated a series of applications, petitions and motions before this court, as follows:
 
 
 2
 (1) On October 2, 1981, the petitioners filed an emergency application (No. 81-4410) for a stay of the decision of the ICC. The petitioners point out that there is pending before this court (No. 81-4407) a petition for review of a decision by the Commission on September 10, 1981 (served September 14, 1981) authorizing the abandonment by ICG of the line from Silver Creek to Columbia, Mississippi. The petitioners characterize the surcharge as an attempt to accomplish the de facto abandonment of the line and thus to deny the petitioners the right to effective review of the Commission's abandonment decision. The court, in response to the emergency application for stay, entered a stay pending review until further order of the court, ordered ICG to file a response to the petitioner's motion and ordered the Commission and the Department of Justice to file a brief outlining their positions in the matter not later than October 13, 1981.
 
 
 3
 (2) On October 2, 1981, the petitioners filed a petition for review of the Commission decision refusing to suspend or investigate the surcharge.
 
 
 4
 (3) On October 9, 1981, ICG filed a response in opposition to emergency application for stay and motion to dissolve stay, in which ICG argues that the stay should be dissolved for the reason that decisions of the Commission not to suspend or investigate rate charges are not reviewable by the courts. ICG moved for a dismissal of the petition for review of the suspension decision and for the dissolution of the emergency stay.
 
 
 5
 (4) In addition to filing briefs in opposition to ICG's motions, petitioners moved for a consolidation of the surcharge case and the abandonment case in an expedited proceeding before this court.
 
 
 6
 For the reasons set forth below, we hold that this court does not have jurisdiction to review the Commission surcharge decision nor to enjoin the surcharge, and we therefore dismiss the petition for review of the surcharge decision (No. 81-4410) and dissolve the emergency stay in No. 81-4410 ordered by this court on October 2, 1981.
 
 
 7
 I. THE PETITION FOR REVIEW.
 
 
 8
 The Commission and ICG move for dismissal of the petition for review of the surcharge decision, relying on a long line of Supreme Court cases which make it clear that this court has no jurisdiction to review the merits of a Commission decision not to suspend or investigate a proposed rate increase. See Consolidated Rail Corp. v. National Association of Recycling Industries, Inc., 449 U.S. 609, 101 S.Ct. 775 (1981); Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); Long Island Rail Road Co. v. Aberdeen & Rockfish Railroad Co., 439 U.S. 1, 99 S.Ct. 46, 58 L.Ed.2d 1 (1978); Aberdeen & Rockfish Railroad Co. v. Students Challenging Regulatory Agency Procedures ("SCRAP"), 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975); United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). Petitioners contend that this court does have jurisdiction over the Commission decision despite this long line of cases.
 
 
 9
 A. The Exception to the Rule of Non-Reviewability.
 
 
 10
 First, petitioners contend that the Supreme Court recognizes an exception to the rule of nonreviewability where the question of the Commission's authority is involved. They argue that the Commission has overstepped its authority in this case by authorizing a de facto abandonment of a line in the absence of an operative certificate of abandonment under 49 U.S.C. §§ 10903-4.[1] They argue that, whereas the Commission can only suspend surcharges found to be in excess of the 110% standard of § 10705a(b)(3)(A) under § 10705a(b)(6), the Commission is prohibited by § 10903 from authorizing abandonment of a line except where the standard of public convenience and necessity of that section is met. The Supreme Court in Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 458 n. 11, 99 S.Ct. 2388, 2396, 60 L.Ed.2d 1017 (1979), and in Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 638-39 n. 17, 98 S.Ct. 2053, 2058, 56 L.Ed.2d 591 (1978), referred to a limited exception to the rule of nonreviewability of Commission suspension orders. The Court stated in a footnote in Trans Alaska that "courts have jurisdiction to review suspension orders to the limited extent necessary to ensure that such orders do not overstep the bounds of Commission authority." 436 U.S. at 638 n. 17, 98 S.Ct. at 2058 n. 17.
 
 
 11
 We reject petitioners' contention that this court has jurisdiction over the Commission decision in this case under the exception noted in Seaboard and Trans Alaska. Initially, we question whether a surcharge which would result in a discontinuance of use of the line by shippers is in fact a "de facto abandonment." An "abandonment" occurs when a carrier "discontinues service" without the intent to resume such service. See, e. g., ICC v. Chicago and North Western Transportation Co., 533 F.2d 1025 (8th Cir. 1976); ICC v. Baltimore and Annapolis Railroad Co., 398 F.Supp. 454 (D.Md.1975) aff'd, 537 F.2d 77 (4th Cir.), cert. denied, Alco-Gravure, Inc. v. Baltimore & Annapolis Railroad Co., 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976). Petitioners have cited no cases supporting the proposition that an increase in rates is an abandonment within the meaning of the Act. In Aeronautical Radio, Inc. v. FCC, 642 F.2d 1221, 1233 (D.C.Cir.1980), cert. denied, --- U.S. ----, 101 S.Ct. 2059, 68 L.Ed.2d 357 (1981), on the other hand, the court held, in an analogous situation involving the Communications Act, that a change in "service" in which "only the rates differed," "did not in fact discontinue, reduce, or impair any service at all."[2] Congress has enacted two distinct sections in Title 49 to deal with rate increases, on the one hand, and "abandonments," on the other hand. In providing a different standard for Commission decisions to suspend proposed surcharges, Congress clearly did not intend for the standard applied to abandonment proceedings to be applicable to suspension proceedings. Moreover, in establishing the standard by which applications for abandonment are to be approved, the statute says nothing about ICC actions which may have the effect of causing shippers to discontinue the use of a line. We read § 10903 to restrict the Commission only in its approval of applications for abandonment and in the issuance of abandonment certificates. Nothing in § 10903 indicates that that section is intended to constrain any other activities of the Commission.
 
 
 12
 Even characterizing the railroad surcharge as a possible "de facto abandonment," this court lacks jurisdiction to review the Commission's decision. The exception relied on by petitioners is limited to determinations of the authority of the Commission to take the action in question. Here, there is no question that the Commission had the authority to decide not to suspend or investigate the surcharge. Review of a Commission suspension decision whenever it is alleged that a rate increase will have the effect of a de facto abandonment of a line is clearly contrary to the long line of Supreme Court cases cited by the Commission and ICG. In Aeronautical Radio, Inc. v. FCC, 642 F.2d 1221, 1233 (D.C.Cir.1980), cert. denied, --- U.S. ----, 101 S.Ct. 2059, 68 L.Ed.2d 357 (1981), the court recognized:
 
 
 13
 Were we to accept petitioner's view, virtually every rate increase might be argued to be a discontinuance of "service" requiring a prior finding of convenience and necessity by the Commission. The attendant burdens would be enormous. Likewise, such a construction would be at odds with the scheme of carrier initiated tariff filings which is at the heart of the Communications Act.
 
 
 14
 We believe that this case involves an analogous situation.[3]
 
 
 15
 Review of Commission suspension decisions whenever de facto abandonment is alleged would undermine the line of cases in which we have held that such decisions are not reviewable and would be contrary to the procedural framework adopted by Congress. The Supreme Court noted in United States v. SCRAP, 412 U.S. 669, 696, 93 S.Ct. 2405, 2420, 37 L.Ed.2d 254 (1973), in which it was alleged that the Commission action was contrary to the National Environmental Policy Act of 1969:
 
 
 16
 Our conclusion that the District Court lacked power to grant the present injunction is confirmed by the fact that each of the policies that we identified in Arrow as the basis for (§ 10708) would be substantially undermined if the courts were found to have suspension powers simply because noncompliance with NEPA was alleged.
 
 
 17
 Petitioners do not contend that every surcharge is a de facto abandonment. Review of Commission surcharge decisions where de facto abandonment is alleged would therefore involve a review of the correctness of the Commission decision under the particular circumstances of each case. As we stated in Georgia Power Co. v. United States, 617 F.2d 107, 110 (5th Cir. 1980):
 
 
 18
 (P)recisely the factual question that the Seaboard Court unequivocally declared to be nonreviewable ... (is) whether the Commission exercised its jurisdiction not to suspend or investigate "correctly under the particular circumstances involved."
 
 
 19
 Besides opening the door for judicial challenges of every Commission suspension decision relating to proposed surcharges, review in this situation would allow petitioners to circumvent the procedural framework enacted by Congress for charges of unlawful actions under the Act. Under the Act, petitioners may file a complaint with the Commission alleging that the surcharge is unlawful. See 49 U.S.C. § 11701 (Supp. II 1978). "(A)ny shipper may require the Commission to investigate the lawfulness of any rate at anytime and may secure judicial review of any decision not to do so by filing a (§ 11701) complaint." Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 454, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979).[4] Commission action under § 11701(b) is then reviewable in this court. Id. at 454, 99 S.Ct. at 2394. Providing judicial review of the Commission suspension decision at this stage, however, would allow petitioners to circumvent these procedures enacted by Congress as the appropriate procedures. The Supreme Court recognized this fact with respect to 49 U.S.C. § 10707 (Supp. II 1978) in Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. at 456, 99 S.Ct. at 2395:
 
 
 20
 Of even greater significance, that interpretation would allow shippers to use the open-ended and ill-defined procedures in (§ 10707) to render obsolete the carefully designed and detailed procedures in (§ 11701).
 
 
 21
 Petitioners argue that this alternative remedy is inadequate because it involves a greater burden of proof on petitioners. The Supreme Court expressly recognized that fact, however, when it declared Commission suspension decisions nevertheless non-reviewable in Southern Railway Co. v. Seaboard Milling Corp. Id. at 454-55, 99 S.Ct. at 2394-95.B. "Finality" of the Commission Suspension Decision.
 
 
 22
 Second, petitioners argue that this court has jurisdiction to review the Commission's decision because it is a "final" decision. The Commission's decision was, however, a decision not to suspend or investigate the proposed surcharge, and the point of Seaboard was that such decisions are not final decisions on the lawfulness of the surcharge and therefore are not reviewable "final" decisions. Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 453, 99 S.Ct. 2388, 2393, 60 L.Ed.2d 1017 (1979). Petitioners state that their primary request was that the Commission reject the surcharge and that suspension pending an investigation was alternative relief. They do not deny, however, that the only action actually taken by the Commission was the decision not to suspend or investigate and that the Commission did not actually rule on the lawfulness of the rates. Petitioners also note that the Commission has acted "finally" in the abandonment case, but this too has no bearing on the finality of the Commission suspension decision. There is no basis for petitioners' contention that the Commission suspension decision is a "final" order reviewable by this court. We find from the language of the order and the promptness of the appraisal that the action of the Commission was merely a refusal to initiate a proceeding to determine the lawfulness of the rate and thus is non-reviewable under Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 107 (1979). See Union Electric Co. v. United States, 626 F.2d 1348 (8th Cir. 1980).
 
 
 23
 C. Jurisdiction Over Unlawful Abandonments.
 
 
 24
 Third, petitioners contend that this court has jurisdiction because "the courts have always had immediate jurisdiction over the abandonment of service." Petitioners, however, cite to no statutory authority supporting the jurisdiction of this court over the alleged unlawful abandonment. We have already explained that we do not have jurisdiction over the decision of the Commission not to suspend or investigate the ICG surcharge because that decision does not constitute a final order reviewable by this court. Neither does this court have initial jurisdiction over a claim of unlawful abandonment. To the extent that petitioners believe that ICG has unlawfully abandoned the line, they may file a complaint with the Commission pursuant to § 11701(b). 49 U.S.C. § 11701(b) (Supp. II 1978). "If ultimately dissatisfied with the Commission's action, a shipper may seek review of its action in the appropriate Court of Appeals, 28 U.S.C. § 2321(a), 2342(5)." Chicago and North Western Transportation Co. v. Kalo Brick and Tile Co., 450 U.S. 311, ---, 101 S.Ct. 1124, 1132, 67 L.Ed.2d 258 (1981). As for petitioners' request for injunctive relief, the Supreme Court noted in Chicago and North Western Transportation Co. v. Kalo Brick & Tile Co., 101 S.Ct. at 1132-33 n. 9:
 
 
 25
 The right of a private party to seek an injunction was repealed by the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94-210, 90 Stat. 127-130. Under the Act as amended and recodified, only the United States, the government of a State, or the Commission itself may sue to enjoin most illegal abandonments.[5]
 
 
 26
 Pursuant to 49 U.S.C. § 11505 (Supp. II 1978), a State transportation regulatory authority may bring a civil action to enjoin a rail carrier from violating sections 10901-10907 (the abandonment provisions), but jurisdiction over civil actions under the Interstate Commerce Act is vested in the district courts, not the Courts of Appeals. 28 U.S.C. §§ 1336, 1337.
 
 
 27
 D. Jurisdiction Under 28 U.S.C. § 1651.
 
 
 28
 Finally, petitioners contend that this court has jurisdiction in order to preserve the court's effective jurisdiction over the abandonment decision. They point to 28 U.S.C. § 1651 which provides:The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 
 
 29
 Petitioners point to no authority, however, supporting the applicability of that provision in a case such as this one. We do not believe that the issuance of a writ under § 1651 would be appropriate in this case. Issuance of such a writ is particularly inconsistent with Congress' intent not to have courts review such non-final Commission orders. We therefore refuse to exercise any discretion which we might have under § 1651. See Kerr v. United States District Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). Petitioners have failed to demonstrate that review of the Commission decision in the abandonment case is in any way precluded by the absence of a stay of the surcharge.
 
 
 30
 II. THE EMERGENCY STAY.
 
 
 31
 Having no jurisdiction to review the Commission suspension decision, we are barred by the rule of Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963), and United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), from "entering disruptive injunctions against the collection of rates not finally declared lawful or unlawful by the ICC." Aberdeen & Rockfish Railroad Co. v. SCRAP, 422 U.S. 289, 317, 95 S.Ct. 2336, 2354, 45 L.Ed.2d 191 (1975). Because we lack jurisdiction to issue the injunction sought by petitioners, we do not consider their arguments as to the appropriateness of an injunction under "conventional standards of equity." United States v. SCRAP, 412 U.S. at 690, 93 S.Ct. at 2420.[6]
 
 
 32
 The petition for review of the Commission surcharge decision, No. 81-4410, is DISMISSED and the emergency stay ordered by this court on October 2, 1981 is DISSOLVED.[7]
 
 
 
 [1]
 49 U.S.C. § 10903 provides that:
 (a) A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of chapter 105 of this title may
 (1) abandon any part of its railroad lines; or
 (2) discontinue the operation of all rail transportation over any part of its railroad lines;
 only if the Commission finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance. In making the finding, the Commission shall consider whether the abandonment or discontinuance will have a serious, adverse impact on rural and community development.
 (b)(1) Subject to sections 10904-10906 of this title, if the Commission
 (A) finds public convenience and necessity, it shall
 (i) approve the application as filed; or
 (ii) approve the application with modifications and require compliance with conditions that the Commission finds are required by public convenience and necessity; or
 (B) fails to find public convenience and necessity, it shall deny the application.
 (2) On approval, the Commission shall issue to the rail carrier a certificate describing the abandonment or discontinuance approved by the Commission. Each certificate shall also contain provisions to protect the interests of employees. The provisions shall be at least as beneficial to those interests as the provisions established under section 11347 of this title and section 565(b) of title 45.
 
 
 [2]
 Petitioners attempt to distinguish Aeronautical Radio on the basis that communications remained available in that case under other tariffs as opposed to the case here where service, according to petitioners, is completely eliminated. Here, as in Aeronautical Radio, however, the service remains available albeit at a higher rate
 
 
 [3]
 At least one of the Supreme Court cases also involved challenges to the proposed rate increases as being unlawful under other provisions of the Act. See, e. g., Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 449 n.4, 99 S.Ct. 2388, 2391, 60 L.Ed.2d 1017 (1979)
 
 
 [4]
 Also, to the extent that the Mississippi Public Service Commission believes that ICG has unlawfully abandoned the line, it may seek injunctive relief in district court. 49 U.S.C. § 11505 (Supp. II 1978); 28 U.S.C. §§ 1336, 1337
 
 
 [5]
 49 U.S.C. § 11704 (Supp. II 1978) allows a private person to seek injunctive relief only to prevent illegal abandonment of a freight forwarding service
 
 
 [6]
 Also, because we lack jurisdiction over the Commissioner's surcharge decision, we do not consider petitioners' request that that decision be reviewed in a consolidated proceeding with the Commission's abandonment decision
 
 
 [7]
 Although our order of October 2, 1981 indicated that it was a stay in Nos. 81-4407 and 81-4410, that was due to an inadvertent error on our part. The order was intended only to stay the ICG surcharge. The Commission abandonment decision was not subject to stay at that time, as the parties have recognized. Although this opinion is addressed to No. 81-4407, the sole purpose for that is to clarify the fact that the stay entered on October 2, 1981, was intended to apply only to No. 81-4410