**J.W. DEWIT FARMS, INC., DeWit Family Farms, Inc., and Don Nelson, d/b/a Quality Wild Rice, Plaintiffs,**

v.

**MINNESOTA CULTIVATED WILD RICE Council and Gene Hugoson, in his capacity as the Commissioner of the Minnesota Department of Agriculture, Defendants.**

No. Civ.03–3264 JNE/JGL.

United States District Court, D. Minnesota.

March 14, 2005.

David R. Moeller, Duluth, MN, Susan E. Stokes, Farmers Legal Action Group, Inc., St. Paul, MN, for Plaintiffs J.W. DeWit Farms, Inc., DeWit Family Farms, Inc., and Don Nelson, d/b/a Quality Wild Rice.

Kent G. Harbison, Fredrikson & Byron, P.A., Minneapolis, MN, for Defendant Minnesota Cultivated Wild Rice Council.

Stephanie A. Riley, Office of the Minnesota Attorney General, St. Paul, MN, for Defendant Gene Hugoson, Commissioner of the Minnesota Department of Agriculture.

## ORDER

ERICKSEN, District Judge.

J.W. DeWit Farms, Inc., DeWit Family Farms, Inc. (collectively, DeWit Farms), and Don Nelson d/b/a Quality Wild Rice (collectively, Plaintiffs) brought this action against Minnesota Cultivated Wild Rice Council (Council) and Gene Hugoson, in his capacity as the Commissioner of the Minnesota Department of Agriculture (collectively, Defendants), alleging that check-off fees collected pursuant to the Agricultural Commodities Promotion Act (the Act), Minn.Stat. §§ 17.51–.69 (2002), are unconstitutional. The case is before the Court on Defendants' motions for summary judgment. For the reasons set forth below, the Court grants the motions.

## I. BACKGROUND

DeWit Farms is a producer of cultivated wild rice in the State of California. Nelson is a Minnesota purchaser of wild rice who purchases and ships wild rice produced in Minnesota, California and elsewhere, including wild rice produced by DeWit Farms.

The purpose of the Act is to promote and stimulate the use, sale and consumption of agricultural commodities and to improve the methods of production, processing and marketing of such commodities. *See* Minn.Stat. § 17.52. Hugoson, as the Commissioner of the Minnesota Department of Agriculture, administers and

oversees the enforcement of the Act. The Council is an organization formed in Minnesota pursuant to the Act.[1]

The Council operates pursuant to the Minnesota Cultivated Wild Rice Promotion Order, the purpose of which is:

> to generate funds equitably from cultivated wild rice (Zizania Palustris L.) producers for the establishment of a program for promotion, advertising, production, market research and market development to benefit the Minnesota cultivated wild rice industry in the growing, processing, distributing, sale and handling of its product. . . .

*See* Affidavit of Stephanie A. Riley, Ex. 1.

More than 65% of the Council's funding for fiscal years 2000–01 through 2002–03 was derived from federal and state grants.[2] The Council also received private donations and royalties from the sale of seed. In addition, the Council is authorized to and does charge a check-off fee to growers and importers of cultivated wild rice. Presently, the fee is 2.5 cents per finished pound of wild rice delivered into, stored within, or sold in Minnesota. Plaintiffs began paying checkoff fees in fiscal year 2002–03.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. Section 1983

In their Complaint, Plaintiffs allege a claim under 42 U.S.C. § 1983 (2000) against Defendants based on a violation of their First Amendment right to free speech. To prevail on this claim, Plaintiffs must establish: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived Plaintiffs of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by*

---

1. Under the Act, a commodity research and promotion council may be created for the producers of each agricultural commodity as a means to accomplish the objectives of the Act. *See* Minn.Stat. §§ 17.52, 17.54, subd. 1.

2. Most of the facts regarding the Council's collection and expenditure of funds referred to in this Order are supported by the unrebutted affidavit testimony of the President of the Council, Beth Nelson. The Court notes that Plaintiffs did not conduct any discovery in this action and, in particular, did not depose Nelson.

*Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir.1999).[3] The parties only dispute the second element.

Plaintiffs allege that the collection of check-off fees from Plaintiffs to fund speech-related activities violates their First Amendment rights under *United States v. United Foods, Inc.,* 533 U.S. 405, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001). In *United Foods,* the United States Supreme Court invalidated a federal statute that imposed fees upon mushroom handlers to fund generic mushroom advertising. 533 U.S. at 412–13, 416, 121 S.Ct. 2334. The statute involved allowed for the assessments to be used for projects for mushroom promotion, research, consumer information, and industry information. *Id.* at 408, 121 S.Ct. 2334. Importantly, however, the assessments in *United Foods* were primarily used to fund generic advertising. *Id.* at 408, 412, 121 S.Ct. 2334 (explaining that "almost all of the funds collected under the mandatory assessments are for one purpose: generic advertising"). *See also Livestock Mktg. Ass'n v. United States Dep't of Agric.,* 335 F.3d 711, 725–26 (8th Cir.2003), *cert. granted in part by Veneman v. Livestock Mktg. Ass'n,* 541 U.S. 1062, 124 S.Ct. 2389, 158 L.Ed.2d 962 (2004) and *Nebraska Cattlemen, Inc. v. Livestock Mktg. Ass'n,* 541 U.S. 1062, 124 S.Ct. 2390, 158 L.Ed.2d 962 (2004).

The Supreme Court has also addressed the issue of compelled payments for generic commodity advertising that was a part of a larger regulatory scheme in *Glickman v. Wileman Brothers & Elliott, Inc.,* 521 U.S. 457, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997). There, the Supreme Court rejected a First Amendment challenge to a series of agricultural marketing orders that required producers of certain fruit to pay assessments for product advertising. *Id.* at 477, 117 S.Ct. 2130. In *Glickman,* the challenged assessments were part of a regulatory scheme that restricted market autonomy by displacing aspects of independent business activity. *Id.* at 469, 117 S.Ct. 2130. The Supreme Court reasoned that the purpose of the generic advertising at issue was legitimate and consistent with the regulatory goals of the statutory scheme. *Id.* at 476, 117 S.Ct. 2130.

■ As a threshold matter, the Court must determine whether Plaintiffs have demonstrated that their First Amendment rights are implicated. Defendants argue that Plaintiffs' objection to paying the check-off fees does not raise a First Amendment concern because the undisputed facts demonstrate that the Council has not used any check-off fees to fund either generic advertising or non-advertising promotion. Hugoson argues further that there is no evidence that Plaintiffs disagree with a message conveyed by any activity undertaken by the Council. Plaintiffs, on the other hand, contend that all of the Council's activities are speech-related activities. As such, Plaintiffs argue the Council's activities are objectionable because they are funded by check-off fees. The Court will consider the categories of the Council's activities separately.

*1. Generic Advertising*

There is no question that assessments used to fund generic advertisements promoting the sale of a particular agricultural product may violate the First Amendment if the party being compelled to pay the assessment disagrees with the message of

---

**3.** Section 1983 does not create substantive rights; instead, it provides a remedy for the violation of a federal constitutional or statutory right. *See Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

the advertisement. *See United Foods,* 533 U.S. at 416, 121 S.Ct. 2334. Here, however, the undisputed factual record demonstrates that the Council has not spent any funds on advertising (generic or otherwise) since fiscal year 1999–2000, approximately two years before Plaintiffs began paying check-off fees. *See* Affidavit of Beth Nelson ¶¶ 5, 7, 13. Plaintiffs argue that it is "from the Council's perspective only" that the Council has spent no money on advertising, and they attempt to create a factual issue by citing to and explaining the Council's budgets for fiscal years 2001–02 and 2002–03. Plaintiffs' speculative interpretation of the Council's budgets, however, is not based on personal knowledge and will not be considered by the Court.[4] *See* Fed. R.Civ.P. 56(e) ("[O]pposing affidavits shall be made on personal knowledge. . . ."). Accordingly, the only admissible evidence in the record regarding the Council's expenditures is the sworn and unrebutted statements of the President of the Council. Based on that evidence, the Court concludes that the Council spent no money on advertisements during the time period Plaintiffs paid check-off fees and therefore, Plaintiffs' objection to advertising cannot form the basis of a First Amendment claim.

### 2. Promotional Activities

Defendants acknowledge that the Council engages in non-advertising promotional projects, such as operating a booth at the Minnesota State Fair, designing its website, holding cooking contests, organizing and attending trade shows, and issuing press releases. Even though these activities do not constitute generic advertising, Plaintiffs nonetheless claim that they are speech-related activities that cannot be funded with check-off fees under *United Foods.*

The Court need not decide whether activities other than generic advertising are governed by the holding of *United Foods* because Plaintiffs have failed to meet their initial evidentiary burden. First, Plaintiffs have not submitted any evidence demonstrating that check-off fees fund these promotional activities. Indeed, the only admissible evidence in the record indicates that these activities are funded without check-off fees. *See* Nelson Aff. ¶¶ 3, 16. Second, Plaintiffs have submitted no evidence demonstrating that they disagree with the message of any of the promotional activities.[5] *Compare United Foods,* 533 U.S. at 405, 121 S.Ct. 2334 (noting that the party challenging the assessments claimed that mushroom advertisements conflicted with their message that its brand of mushrooms is superior). For these reasons, the Court concludes that Plaintiffs' objection to these activities cannot form the basis of a First Amendment claim.

### 3. Research and Other Expenditures

Finally, Plaintiffs hope to extend the fact-specific holding of *United Foods* to cover all of the Council's remaining activi-

---

4. The Court notes that by failing to conduct discovery, Plaintiffs have forfeited the opportunity to appropriately inquire into the meaning of the documents they now purport to cite as evidence.

5. Indeed, Plaintiffs have not demonstrated that any of these activities convey a message, let alone one with which they disagree. Plaintiffs do allege in the Complaint that the Council "primarily promotes and advertises rice produced in the State of Minnesota, and never advertises rice produced in the State of California, or anywhere outside the State of Minnesota." Comp. ¶ 8. However, Plaintiffs have introduced no evidence to support this allegation and therefore have failed to meet their burden at this stage in the litigation. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505 (a party opposing summary judgment may not rest on mere allegations).

ties. In particular, Plaintiffs claim that activities, such as research, staff salaries, rent and office equipment, grower activities, and regulatory and legislative work are speech-related and therefore subject to First Amendment scrutiny. Plaintiffs argue generally that:

Research is useless without the publication of the results, the publication of proposals, discussions about the proposals, etc. That is all communication-speech activity. The amounts spent for "grower activities," as described by Ms. Nelson involve "newsletters, field days, and annual conferences," which are nothing but speech related activities. The amounts spent for "regulatory and legislative work" are also speech related activity. Ms Nelson describes it as "working with executive agencies to establish programs and policies favorable to wild-rice growers," which is nothing but communication. Furthermore, the $289,000 spent for "contract staff, rent, and office equipment" is all money spent to support the speech related activities as described by Ms. Nelson.

Pls.' Opp'n Mem. at 13–14 (citations omitted).

The Court declines to consider either the issue of whether these activities are speech-related activities or whether they are governed by *United Foods* because Plaintiffs have failed to submit any evidence to support their claim. While the Court acknowledges that many of the Council's research, regulatory, and grower activities could conceivably be used to convey a particular message that would be speech-related, the Court also recognizes that it is equally possible that these activities do not convey any particular message. At this stage of the litigation, particularly after Plaintiffs have been afforded ample opportunity to conduct discovery, the Court will not presume that the above-described activities involve speech. The Court notes once again that it is Plaintiffs' burden to bring forth specific facts establishing not only that these activities involve speech, but that they convey a message with which they disagree. *See, e.g., Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548 (explaining that Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Plaintiffs have failed to do so.

For the reasons explained above, and viewing the record in the light most favorable to Plaintiffs, the Court concludes that as a matter of law, Plaintiffs cannot make the necessary showing of a First Amendment violation to sustain their § 1983 claim. Therefore, summary judgment is appropriate.

## B. Declaratory Relief

■ Plaintiffs also allege a cause of action for declaratory relief. Specifically, Plaintiffs request a declaration from the Court that the check-off fees violate their First Amendment rights. This claim is governed by the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (2000). The Declaratory Judgment Act is not an independent source of federal jurisdiction. *See Schilling v. Rogers,* 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960). Because the Court has already determined that Plaintiffs' § 1983 claim fails, the Court dismisses Plaintiffs' claim for declaratory relief for lack of jurisdiction. *See id.* Even if the Court retained jurisdiction over this claim, it would necessarily fail on the merits because, on the record before the Court, Plaintiffs cannot demonstrate that a federal right has been violated. *See id.* (explaining that the availability of relief under the Declaratory Judgment Act pre-

supposes the existence of a judicially remediable right).

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Council's motion for summary judgment [Docket No. 15] is GRANTED.

2. Hugoson's motion for summary judgment [Docket No. 23] is GRANTED.

3. Plaintiffs' Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.